IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JONATHAN FAIRCLOTH,            )
                               )
    Plaintiff,                 )
                               )
v.                             )      Civil Action No.: 3:18-cv-592-SRW
                               )
                               )
ANDREW SAUL,                   )
Commissioner of Social Security,[1] )
                               )
    Defendant.                 )

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

On August 16, 2015, Plaintiff Jonathan Faircloth filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging that he became disabled on August 16, 2015. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision dated May 26, 2017. Plaintiff appealed that decision and the Appeals Council denied Plaintiff's request for review on May 7, 2018. The ALJ's decision consequently became the final decision of the Commissioner of Social Security. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1

decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10. Based on review of the parties' submissions, the relevant law, and the record as a whole, the court will affirm the Commissioner's decision.

## II. STANDARD OF REVIEW AND REGULATORY FRAMEWORK[2]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ,

---

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1239 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239–1240.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 20 years old at the time he filed his application for benefits and was twenty-two years old at the time of the ALJ's decision. R. 39, 245. He completed the

4

eleventh grade and lives alone in a three-bedroom home. R. 115–116. Plaintiff testified that he has never had a job and that his mother helps him pay bills. R. 116–117.

Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since August 16, 2015, the application date[.]"[4] R. 24. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "Crohn's Disease/Inflammatory Bowel Disease, Diabetes Mellitus, Chronic Kidney Disease, Borderline Intellectual Functioning, Affective Disorder, Anxiety Disorder, and Hypertension[.]" *Id*. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id*. Next, the ALJ articulated Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the Claimant has the residual functional capacity to perform sedentary[5] work as defined in 20 CFR 416.967(a) except with the following function-by-function limitations: He can occasionally lift and/or carry ten pounds, and frequently lift and/or carry less than ten pounds. He can sit for six hours, stand for two hours, and walk for two hours. He can push/pull as much as he can lift and/or carry. He can frequently climb ramps and stairs. He can never climb ladders, ropes or scaffolds. He can frequently balance, frequently stoop, frequently kneel, frequently crouch, and frequently crawl. He can occasionally work at unprotected heights. He can occasionally work around moving mechanical parts. He can occasionally work in weather, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration. He can work around moderate noise. He can perform simple, routine, repetitive tasks, but not at production rate pace (e.g., assembly line work). He is limited

---

[4] For SSI benefit purposes, Plaintiff must establish disability as of the application date. Therefore, the relevant period for Plaintiff's SSI application is the month in which he filed the application through the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330; 416.335.

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

to simple work-related decisions. He can frequently respond appropriately to supervisors, and coworkers. He can occasionally respond appropriately to the public. Time off can be accommodated by normal work-breaks.

R. 27. At Step Four, based upon the testimony of a VE, the ALJ concluded that Plaintiff has no past relevant work. R. 39. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as a parts sealer, laminator, or screener. R. 39–40, 132–133. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since August 16, 2015, the date the application was filed[.]" R. 40.

## IV. DISCUSSION

On appeal, Plaintiff raises four issues for review, restated as follows: (1) whether the ALJ erred in assessing the medical opinions offered by three of Plaintiff's treating physicians; (2) whether the ALJ erred in assessing the opinions of two consultative examiners; (3) whether the ALJ "erred by improperly acting as both Judge and medical doctor"; and (4) whether the ALJ erred in assessing Plaintiff's subjective complaints of pain. Doc. 14 at 3.

1. Treating Physicians

First, Plaintiff contends that the ALJ erred by failing to adopt the opinions of three of Plaintiff's treating physicians—Dr. Widhani, Dr. Thomas, and Dr. Meka. *Id*. Plaintiff refers to these opinions as "uncontroverted common medical opinions" that Plaintiff is unable to perform substantial gainful activity. *Id.* at 7. Plaintiff also contends that the ALJ provided inadequate explanations for the weight she gave these opinions. *Id.* at 12–13.

The Commissioner argues that the ALJ appropriately provided good reasons for not affording these opinions controlling weight. Doc. 15 at 5–8.

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997))(internal quotation marks omitted). "Good cause" exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records. *Id.* at 1241 (citation omitted). The Commissioner must specify what weight is given to a treating physician's opinion, and any reason for giving it no weight at all. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing *Broughton v. Heckler*, 776 F.2d 960, 961–962 (11th Cir. 1985), and *Wiggins v. Schweiker*, 679 F.2d 1387, 1389–1390 (11th Cir. 1982)). Failure to do so is reversible error. *Id.* (citations omitted). As this court has explained:

> Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

7

*Rudolph v. Berryhill*, 2018 WL 1527827, at *5 (M.D. Ala. 2018) (quoting *Albery v. Comm'r of Soc. Sec.*, 2012 WL 2589297, at *7 (M.D. Fla. June 7, 2012), *report and recommendation adopted*, 2012 WL 2589267 (M.D. Fla. 2012), and citing *Winschel*, 631 F.3d at 1179).

Plaintiff contends that the ALJ erred by improperly weighing the opinions of Dr. Nitin Widhani, Dr. Charles Thomas, and Dr. Rao Meka. Each doctor treated Plaintiff's physical condition and determined that Plaintiff was unable to work. R. 1076, 1358, 1384–1385. The ALJ discussed Plaintiff's treatment history with each doctor as well as each doctor's opinion regarding Plaintiff's inability to work. R. 29–39. However, the ALJ ultimately gave each opinion "little weight," explaining her decision with respect to each doctor as follows:

> I give little weight to Dr. Widhani's assessment that the claimant is not capable of working . . . . Dr. Widhani is a treating physician. His opinion is not generally consistent with the record as a whole. In particular, his opinion is not consistent with the progress notes at Exhibit 15F, pp 13-14, which show renal stability, improved anxiety disorder, improved gastroenteritis and well controlled blood pressure.
>
> I give Dr. Meka's assessment little weight because it is not generally consistent with the record as a whole . . . . The available medical evidence of record does not support Dr. Meka's assessment that the claimant had a hematocrit of 30 percent or less on repeated examinations. Furthermore, the claimant's testimony contradicts Dr. Meka's assertion that the claimant can only lift five pounds.
>
> . . . .
>
> I give little weight to Dr. Thomas' opinion that the claimant is unable to work because of severely diminished muscle strength . . . . Dr. Thomas' opinion is not generally consistent with the medical evidence of record. Subsequent examinations noted that the claimant had normal motor strength. The sedentary residual functional capacity accommodates for the decreased strength.

R. 38.

Upon review of the ALJ's decision and the record as a whole, the court concludes that the ALJ did not err in her assessment of these physicians' opinions. Even though all three doctors offered the opinion that Plaintiff could not work, this decision is reserved to the ALJ. *See* 20 C.F.R. § 416.927(d). An ALJ is not obligated to accept a treating physician's opinion if the opinion is conclusory, if it is not supported by the evidence, if the evidence supports a contrary finding, or if it is inconsistent with the physician's own records. *See Crawford*, 363 F.3d at 1159; *Phillips*, 357 F.3d at 1240–1241; *see also* 20 C.F.R. § 416.927(c)(2). The ALJ in this case found that each opinion was inconsistent with the other evidence of record. This is a sufficient reason not to accept a treating physician's opinion.

Plaintiff argues that the ALJ's explanation was "simply conclusory and does not provide an adequate basis to reject their common medical opinions." Doc. 14 at 12–13. The court cannot agree. The ALJ gave specific examples of the evidence she found to be inconsistent with the doctors' respective opinions. For instance, the ALJ found that Dr. Widhani's opinion was not consistent with treatment notes showing renal stability, improved anxiety disorder, improved gastroenteritis, and well-controlled blood pressure. R. 38. With respect to Dr. Meka's opinion, the ALJ cited treatment notes that were inconsistent with Dr. Meka's assessment that Plaintiff's hematocrit was 30% or less on repeated examinations. R. 38, 1149, 1183, 1195, 1384. The ALJ also observed that although Dr. Meka suggested that Plaintiff could only lift five pounds, Plaintiff had in fact testified that he could lift ten pounds. R. 38, 118. Finally, the ALJ explained that she gave

9

little weight to Dr. Thomas' opinion that Plaintiff had below 50% normal muscle strength because subsequent examinations showed that Plaintiff had normal motor strength. R. 38, 996, 1357–1358, 1375. Moreover, the ALJ accounted for Plaintiff's decreased strength by limiting him to sedentary work only. R. 27, 38. The court concludes that the ALJ provided adequate explanations in support of the decision to afford the treating physicians' opinions little weight, and that good cause existed for doing so.

    2. Consultative Examiners

Next, Plaintiff claims that the ALJ erred in assessing the opinions of psychological consultative examiners Michele King, Ph.D, and Dr. Babatunde Abolade. Doc. 14 at 9–13. Plaintiff argues that the ALJ "erred by failing to provide adequate rationale addressing" Dr. King's opinion and, conversely, by giving "significant weight" to Dr. Abolade's psychological assessment. *Id.* at 9, 12.

Plaintiff presented to Dr. King for a psychological consultative evaluation on November 5, 2015. R. 29, 988–992. Dr. King indicated that

> [b]ased on psychological factors only, [Plaintiff] is judged to have a moderate restriction of activities and interests and moderate impairment in his ability to relate to others. He would have difficulty functioning independently due both to his psychological and physical problems. He is capable of taking care of his basic physical care, but is limited in the areas of communication and social and adaptive functioning. If cleared medically to work, he would be able to understand, carryout, and remember simple repetitive instructions. He likely would not respond well to normal work pressures and would be at risk for an exacerbation of both psychological and medical problems if he were to attempt a full time job. If awarded benefits, he would be able to manage them himself.

R. 30, 992.

The ALJ explained the weight she gave Dr. King's opinion as follows:

> Dr. King's IQ testing and assessment that the claimant is capable of unskilled work is generally consistent with the record as a whole, and is given great weight. However, Dr. King's assessment that the claimant would not be able to maintain full time employment and would have difficulty functioning independently is not consistent with the record as a whole. Per the claimant's testimony, he lives alone and performs activities of daily living independently. Accordingly, these opinions are given little weight.

R. 38.

The court notes that Dr. King was a consultative examiner rather than a treating physician. Therefore, her opinion was not entitled to controlling weight. *See* 20 C.F.R. § 416.927(c)(2). The opinion of a non-treating doctor, such as a one-time examiner, is not entitled to special deference or consideration. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)(finding that when examining patient on a single occasion only, physicians' opinions were "not entitled to deference because as one-time examiners they were not treating physicians"); *see also Crawford*, 363 F.3d at 1160; *Tapley v. Colvin*, No. CV 113-222, 2015 WL 764022, at *3 (S.D. Ga. Feb. 23, 2015). A doctor is not a treating source if the claimant's relationship with the doctor is based solely on the need to obtain a report in support of his or her claim for disability rather than the need for treatment or evaluation. *See* 20 C.F.R. § 416.902.

In evaluating medical opinions, an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. Some medical opinions deserve more weight than others: "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary," but the opinion of a one-time examiner is not entitled to great weight. *Lewis*, 125 F.3d at 1440; *see Crawford*, 363 F.3d at 1161 (citing *McSwain*, 814 F.2d at

619). Reasons to assign little weight to a medical opinion include "when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In this case, the ALJ appropriately considered and provided an adequate explanation for the weight she afforded Dr. King's opinion. The ALJ's opinion clearly sets forth the parts of Dr. King's opinion that she credited and why, as well as the parts of the opinion that she did not credit and why. Plaintiff faults the ALJ for not giving a specific explanation for the weight she gave Dr. King's opinion that Plaintiff "would not respond well to normal work pressures and would be at risk for an exacerbation of both psychological and medical problems if he were to attempt a full time job." Doc. 14 at 12; R. 38, 992. However, the ALJ is not required to discuss each and every aspect of a doctor's opinion specifically. *See Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 534 (11th Cir. 2014) (finding that the ALJ did not err by failing to address physician's opinion regarding specific limitation where the ALJ's decision showed that he considered the physician's opinion and the claimant's medical condition as a whole). Here, the record shows that the ALJ considered Dr. King's opinion in detail, including her specific opinions as to Plaintiff's limitations, and gave a sufficient explanation for the weight she afforded different aspects of Dr. King's opinion. The court finds no legal error in the ALJ's decision to give certain parts of Dr. King's opinion little weight. There is substantial support for the ALJ's decision in the record.

With respect to Dr. Abolade's psychological assessment, Plaintiff argues that the ALJ erred in giving it "significant weight." Doc. 14 at 12. Plaintiff presented to Dr. Abolade on November 28, 2016, for a psychological evaluation. R. 33, 1349–1352. The ALJ summarized the results of the evaluation as follows:

> The claimant reported that he had been given for anxiety Xanax while hospitalized in August. The claimant reported that the Xanax helped manage his symptoms. Dr. Abolade estimated the severity of the claimant's anxiety symptoms to be medium. The claimant reported episodic depression secondary to major illness. At the time of the evaluation, the claimant reported the [*sic*] he was free of symptoms of depression. A mental status evaluation revealed that the claimant was anxious. His mood was normal, with no signs of either depression or mood elation. His associations were intact, thinking is logical, and thought content appeared normal. His cognitive functioning and fund of knowledge were age appropriate. His short-term memory and long-term memory were intact. He was fully oriented. His vocabulary and fund of knowledge indicate cognitive functioning in the normal range. The assessment was mixed anxiety disorder and recurrent depressive disorder.

R. 33. The ALJ credited Dr. Abolade's assessment that Plaintiff "was free of depression and had cognitive functioning in the normal range" with significant weight, finding that it was "generally consistent with the record as a whole." R. 38.

Plaintiff argues that the ALJ's decision regarding Dr. Abolade's opinion is "factually inaccurate." Doc. 14 at 12. Plaintiff points to contrary evidence in the record, including the results of Dr. King's evaluation. *Id.* However, substantial evidence in the record supports Dr. Abolade's assessment and the ALJ's decision to give it significant weight. For example, the record contains normal mental status examinations as well as Plaintiff's own report to Dr. Abolade that he was free of symptoms of depression. R. 994–996, 998–999, 1001, 1294, 1350, 1375. Plaintiff reported that medication helped manage his symptoms, and, on other occasions, denied any depression or anxiety. R. 994, 1352, 1374, 1381. Thus, there is substantial evidence to support the ALJ's rationale for giving significant weight to Dr. Abolade's assessment. Plaintiff evidently favors the opinions offered by Dr. King to those offered by Dr. Abolade. However, Plaintiff's argument

13

amounts to asking the court to reweigh the evidence, which is not permitted. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

    3. Whether the ALJ Acted as Both Judge and Doctor In Formulating the RFC

Plaintiff next argues that the ALJ "improperly act[ed] as both Judge and medical doctor" in formulating his physical RFC. Doc. 14 at 8. Plaintiff contends that because the ALJ did not adopt the opinions of the three treating physicians discussed above, "the evidence of record contained no other medical support for his physical RFC finding." *Id.*

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §416.946(c). Such "assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546). It is not a physician but the ALJ who is charged with assessing a claimant's RFC at the administrative level. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); *see also Castle v. Colvin*, 557 F. App'x 849, 853–854 (11th Cir. 2014) (finding that ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [the plaintiff's] RFC"). The determination of a claimant's RFC is an administrative assessment, not a medical one, and the final responsibility for assessing a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3), 416.946(a); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *Castle*, 557 F. App'x at 853. Although an ALJ may not make medical findings, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), it is the ALJ's responsibility to resolve conflicting medical opinions and evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).

As the court previously found, the ALJ properly afforded little weight to the opinions of Dr. Widhani, Dr. Thomas, and Dr. Meka. However, the fact that the ALJ did not give controlling weight to these opinions does not mean that her decision lacked an evidentiary basis. Rather, throughout a lengthy decision the ALJ discussed the medical evidence and other evidence supporting her physical RFC assessment. R. 24–39; *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). Contrary to Plaintiff's contentions, the ALJ provided a sufficient rationale to link substantial evidence in the record to the conclusions reached in the RFC assessment. The ALJ addressed in great detail Plaintiff's testimony, treatment history, reports of daily activities, and the opinions of medical sources, including those the ALJ credited and those she did not.

The ALJ was not required to adopt a physician's findings as the RFC finding. Contrary to Plaintiff's contention that the ALJ's physical RFC finding lacked support in the form of a medical opinion, the ALJ specifically relied on Dr. Frances Bartel's consultative examination observations that Plaintiff had a normal gait, no trouble getting on the exam table, full strength, and no limitations in range of motion.[6] R. 38, 979–982.

---

[6] Plaintiff points to a portion of Dr. Bartel's consultative examination report indicating that he can hold, handle, or carry less than five pounds; drops things frequently; and can sit 15–30 minutes, stand fifteen minutes, and walk ten minutes. Doc. 14 at 6; R. 980. Plaintiff contends that these findings are not inconsistent with a finding of disability. However, as the Commissioner points out, the ALJ found that this

15

From the court's review, the medical evidence supports the ALJ's RFC assessment. Plaintiff points to evidence in the record that he believes supports greater physical limitations than those found by the ALJ. Doc. 14 at 3–6, 13–14. However, in so doing, Plaintiff again asks the court to reweigh the evidence, which is not this court's role. *See Moore*, 405 F.3d at 1213 ("To the extent that [the plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.")(internal quotations and footnotes omitted). In this case, the court concludes that the ALJ's physical RFC determination is based on substantial evidence and is in accordance with controlling law.

  4. Subjective Complaints of Pain

Finally, Plaintiff argues that the ALJ "erred by failing to properly reject [his] pain testimony." Doc. 14 at 13. Specifically, Plaintiff asserts that the ALJ failed to address adequately his testimony that Irritable Bowel Syndrome ("IBS") and Crohn's Disease cause him abdominal pain and daily diarrhea necessitating frequent bathroom breaks. *Id.* at 13–14.

In this circuit, to demonstrate that pain or symptoms of an underlying medical condition render him disabled, a plaintiff must satisfy what has come to be known as the "pain standard." *Mack v. Comm'r of Soc. Sec.*, 420 F. App'x 881, 883 (11th Cir. 2011); *see*

---

portion of Dr. Bartel's report reflected Plaintiff's reports to Dr. Bartel rather than Dr. Bartel's own observations and opinions. R. 30. The ALJ found that Dr. Bartel's "clinical examinations and testing," rather than Plaintiff's self-reports of limitations, were "generally consistent with the record as a whole." R. 38. Plaintiff has not demonstrated that the ALJ's conclusions about Dr. Bartel's report were erroneous.

*also Vonboeckman v. Colvin*, No. 5:13-cv-1401-SLB, 2014 WL 6239598, at *5 (N.D. Ala. Nov. 13, 2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996). Under that standard, the plaintiff must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards*, 937 F.2d at 584 (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d at 1054).

In making the credibility determination in this case, the ALJ generally found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." R. 34. The ALJ specifically considered Plaintiff's IBS and Crohn's disease throughout the decision, and found that both impairments were severe impairments. R. 24. The ALJ considered Plaintiff's treatment history related to Crohn's disease, including hospitalizations in July and August 2016 for pancolitis and sepsis secondary to Crohn's disease. R. 35. However, the ALJ found that upon follow-up in March 2017, Plaintiff's condition had improved. *Id*. The ALJ also specifically found that Plaintiff's testimony about daily diarrhea was not supported by his treatment records. *Id*. Plaintiff has failed to point to, nor has the court found, any evidence in the record that contradicts the ALJ's finding. The ALJ nevertheless included postural and environmental limitations in

17

Plaintiff's RFC to accommodate his pain complaints. Plaintiff has failed to explain what different, additional limitations not already included in the RFC the ALJ should have included.

The ALJ sufficiently discharged her duty in reviewing the medical evidence and determining whether and how Plaintiff's impairments affect his ability to work. The ALJ's decision articulates the basis for the RFC and cites to substantial supporting evidence in the record. Although Plaintiff has pointed to evidence in the record that he contends supports a different result, it is not the court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x. 670, 671 (11th Cir. 2017). The court discerns no legal error in the ALJ's consideration of the evidence of record, or in her explanation of the decision. Accordingly, because the Commissioner's decision is supported by substantial evidence and the proper legal standards were applied, it is due to be affirmed.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision will be affirmed. A separate judgment will issue.

DONE, on this the 28th day of October, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge